## HINRICHS v. BRADY.

A broker contracted for his principal to purchase land for a certain amount. There was a mortgage on the land to secure several notes. The record definitely stated the rate of interest borne by the notes to be 6 per cent. per annum, but did not show that past-due notes and installments of interest bore an increased rate of interest. The broker did not ascertain this fact, and failed to investigate, as requested by the principal, to see if one of the notes had been paid. The principal, going on the assumption that the one note had been paid, and that the others bore only 6 per cent. interest, overpaid for the land, and sought to recover from the broker. **Held,** that the broker had a right to rely upon the recitals of the record which definitely stated the rate of interests, as had the principal who could not be held for a higher rate, and hence there could be no recovery from the broker for payments of interest in excess of that rate.

The broker having failed to investigate as to whether the one note had been paid, and having allowed the principal to act on the assumption that it had been, was liable to the principal for the sum he could be legally held to pay thereupon.

The interest not having been paid when due, and no rate being specified on overdue interest, 7 per cent., the rate prescribed by Rev. Civ. Code, § 1417, would apply on overdue interest payments, and the broker would be liable for the difference between the amount so computed and what the broker represented would be due under the interest as he stated it at 6 per cent. straight.

Where payments were indorsed on a note, but where there was a failure to designate whether they should be credited as principal or interest, the law will apply them first to the payment of interest.

A mortgage note bore 12 per cent. interest per annum by its terms, with interest on overdue installments of interest. The land was purchased by a person who had constructive notice only of the note as

bearing interest at 6 per cent. per annum; that being the rate speci-
fied in the record of the mortgage. There were several payments in-
dorsed on the note, but no application was designated. **Held,** that the
purchaser would be required to pay the principal due, after applying
the payments to the interest earned up to the time of sale computed
at 12 per cent, per annum, plus the interest on overdue annual install-
ments of interest at 7 per cent. per annum, and the balance to the
principal, with 6 per cent. interest per annum on the balance of prin-
cipal from date of sale to the time of payment.

Haney, P. J., and Corson, J., dissenting.

(Opinion filed, May 21, 1909.)

Hon. FRANK B. SMITH, Judge.

On rehearing. Former opinion, judgment, and order denying
new trial reversed.

For former opinion, see 20 S. D. 599, 108 N. W. 332.

*Joe Kirby* and *B. C. Huddle,* for appellant. *James Brown,* for
respodnent.

WHITING, J.   This cause was before this court and the
judgment of the lower court was affirmed in an opinion to be
found in 20 S. D. 599, 108 N. W. 332; but upon application on
the part of the appellant a rehearing was granted in said action,
and the same is now before this court on such rehearing.

The facts in this case are quite fully stated in the former
opinion, and it only becomes necessary to call attention to a few
additional matters not set forth in said former opinion, and to one
apparent oversight in regard to the facts herein.   From a reading
of said former opinion, it appears that the writer thereof had in
mind that the incumbrance of $6,850 against the La Bean land
was all evidenced by one note.   The facts, however, are that there
were six notes all dated September 27, 1899, due respectively, one,
two, three, four, five, and six years from their date; the first five
notes being for $1,000 each, and the last note being for $1,850.
Under the terms of said notes, they bore interest at 6 per cent. per
annum payable annually until due.   The principal and all interest
bore interest at the rate of 12 per cent. per annum from the time
same were due.   The mortgage securing said notes accurately de-
scribed same, with the exception that the only reference to interest
is contained in the following provision as found in said mortgage:
"All bearing interest at the rate of 6 per cent. per annum, interest

payable annually." We deem the further facts shown by the correspondence between the parties prior to the closing of said deal to be material. The defendant, appellant herein, writing to the plaintiff, respondent herein, in one of his letters stated as follows, in relation to the mortgage indebtedness on the La Bean land: "This is the amount due: Mortgage dated September 27, 1899, $6,850; interest 6 per cent.; payable $1,000 each year on September 27th, until 1904, then on September 27, 1905, there is $1,850 due. He has made only one payment of $1,000, and owes all the interest and $5,850 of the principal and about $80 taxes." Plaintiff, writing to the defendant later, said: "I think it best for me to assume all against the land except the taxes, which he must pay." In a still later letter the plaintiff, in a postcript added to said letter, wrote to the defendant as follows: "Better get La Bean to present the note that is already paid. It seems to me that I should see that also."

From the above correspondence it is quite apparent that, while the letter from the defendant to the plaintiff above mentioned was a little vague as to whether one note had been paid in full, both principal and interest, the plaintiff understood the first note had been paid in full, and the defendant, when he received the letter containing the postscript above mentioned, was plainly advised as to how plaintiff understood the facts, and, if the defendant did not so understand them, he was certainly bound to explain the matter to the plaintiff, who was relying upon him for his information. In another letter written by the plaintiff, the plaintiff made what he termed a "hasty computation," showing the amount of interest which he thought due, and the defendant, answering this letter, stated that there was very little difference between his and plaintiff's figures, adding the following words: "Mine, like your own, being hurried and therefore not infallible." A computation of the amount which would be due for interest figuring the same at 6 per cent. with interest payable annually, and using as a basis $5,850, shows very clearly that this is the amount which these parties must both have had in mind in order to have reached the sum which they considered to be practically the correct amount due for interest. So it is very evident from the correspondence that both

plaintiff and defendant believed the first note of $1,000 to be entirely paid. The correspondence above mentioned also shows clearly that it was the duty of the defendant to see that the taxes were all paid by La Bean; also, that it was his duty to inspect the first note of $1,000, his principal having requested him to do so.

We therefore cannot see wherein there could be any question whatever as to the liability of the defendant for some damages; the only question being whether he is liable for the full amount, as found by the lower court, or for some less amount. He is certainly liable for any taxes remaining unpaid against the land at the time the title to the same was transferred to plaintiff. The court in the former decision herein held that the defendant was liable also for all of the additional interest on the several notes over and above the 6 per cent. mentioned in the mortgage, and this upon the theory that, under said mortgage, it was the duty of the defendant, as agent, to have ascertained by inquiry of the proper parties the exact provisions of the notes in relation to interest, and the court cited certain authorities in support of this position, chief among which is the case of Ricketson v. Richardson, 19 Cal. 330. We believe that this case lays down, in so far as it states propositions of law, the true rules of law; but we cannot agree with the former decision of the court, that, under the rules laid down in this California case, the plaintiff is entitled to recover the full amount for which verdict was directed. Neither do we think the other cases cited and referred to sustain the former opinion of this court.

It is the claim of the defendant that, plaintiff having purchased this land relying upon the constructive notice given by the mortgage, there being no actual notice to the contrary, he could not have been required to pay any greater rate of interest than named in said mortgage. Of course, if this is true, then, if he voluntarily paid more than he was legally bound to, he is not entitled to recover same from the defendant. In reviewing the different cases cited by the respective counsel, we find a line of distinction running through them. In some cases the mortgage or other instrument of record purported to give the amount of the principal of the indebtedness, while in other cases such instrument did not purport to give such principal, but made reference to other instru-

ments from which the amount of principal could be ascertained, and, in certain cases, such instruments showed that the amount of principal was unascertainable or undeterminable at the time the papers were executed. In other cases the instruments of record spoke of the indebtedness as bearing interest, without in any manner stating the amount thereof, while in still other cases, like the one at bar, we find the instrument of record purporting to state the rate of interest which the notes bear, without, however, specifically stating whether this rate is limited to the time before the paper is due or not. We come then to this one question: The mortgage in this case having stated the rate of interest the notes were to bear, had the plaintiff the right to rely on the same as the rate both before and after due on this note?

We believe he did. It would, no doubt, be conceded that if the note in question had borne interest at 12 per cent. before due, and mortgage read 6 per cent,. the difference between the 12 and 6 per cent. for time before notes were due could not have been collected. Our statute (section 1421, Civ. Code) provides: "Any legal rate of interest, stipulated by a contract, remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." Certainly therefore when a person, reading the mortgage in question, read that the notes were to bear 6 per cent. interest, such person would have a right to presume either that such note specifically provided that that was the rate both before and after due, or else that such note was silent as to the rate after due, in which case, under the statue, it would still continue to bear interest at 6 per cent. We think that a distinction should be drawn, both in relation to recovery of interest and principal, between those mortgages wherein the amount of principal or interest purports to be definitely stated, and those mortgages where, by the instrument itself, one is referred to other sources for further information in relation to such principal or interest. A careful reading of the California case above mentioned calls attention to this distinction. It will be seen by that case that there was no mention of the rate of interest in the mortgage, but there was reference to the fact that the indebtedness bore interest. Bearing in mind this fact, we will note what the court

said in that case: "It is true the mortgage does not describe, or profess to describe with exactness, the debts secured by it. It described the notes, except as to the rate of interest, and provides that on default of payment of the sums mentioned, with interest at their maturity, then the mortgagee may sell the mortgaged premises. * * * It is true it has been held in some cases that, where a note is described in a mortgage, as it is made or recorded, as a note for a given sum, the mortgagee cannot set up, as against a subsequent purchaser or mortgagee, a different and larger debt, for the plain reason that a party dealing with or in respect to the property from an inspection of the mortgage contracts in reference to its terms, and cannot be supposed to know or suspect that the real fact is different from the recorded account of it; but the question here is wholly different. Here, the mortgage not only asserts that the debts recited in it bear interest, but, at least inferentially, that they bear a conventional rate of interest, for the mortgage provides for the payment of the interest accruing at the time of the maturity of the debts, and there would be no interest due then by the mere force of the law unless it had been expressly agreed that the notes should bear interest before they were due. * * * When it was seen that the notes were to bear, and did bear, interest, and that the property was pledged for the principal and that interest, and the names of the payees, the dates, etc., were given, it became the duty of a subsequent incumbrancer to inquire into the facts and ascertain them." This California case cites and quotes from the case of Richards v. Holmes, 18 How. 145, which was also a case where the rate of interest was not named in the mortgage, but the mortgage clearly showed that the indebtedness bore interest at some rate, and the court held that this was sufficient to put a subsequent incumbrancer on inquiry as to what the rate of interest was and as to the time or times of its payment. It is readily seen that there is a distinction to be made between cases such as these and cases such as the one at bar, where the mortgage purports to give the other information which in the cases referred to was omitted therefrom. The mortgage in this suit at bar gives the rate of interest and the time for payment of same.

In the case of Gardner et al. v. Emerson et al., 40 Ill. 296,

being a case wherein the parties to a first mortgage had stipulated
to the payment of a higher rate of interest than that specified in
the mortgage, the court held that, while such a contract might be
binding against the mortgagor, personally, yet the excess of inter-
est agreed to be paid could not be made a lien upon the land to the
prejudice of subsequent incumbrancers; the court saying: "They
had a right to redeem from this mortgage, by paying the amount
due according to its terms as recorded.  As against them, no new
terms could be incorporated into the mortgage, and no additional
indebtedness could be secured by it."

In the case of Whittacre et al. v. Fuller et al., 5 Minn. 508,
the court, at page 515, speaking in relation to the rights of prior
and subsequent mortgages and referring to the first mortgage upon
the premises in question, uses these words: "As between the orig-
inal parties to this mortgage, it is a lien upon the premises to the
amount due upon the note which it secures, according to the legal
amount of interest secured by said notes; but subsequent incum-
brancers are bound by nothing more than the record discloses
(unless express notice be proved), and as the record makes no
mention of the rate of interest specified in the note, as to the sec-
ond mortgagee, the same must be computed at the rate of 7 per
cent. per annum."  While we do not wish to be understood as
holding to the full extent of this opinion, yet it goes to show the
trend of the decisions in our neighboring state.

In the case of Bassett v. McDonel et al., 13 Wis. 444, the
facts were that the mortgagor, after giving the first note and mort-
gage securing the same, entered into a written contract with the
mortgagee for the payment of the 12 per cent. interest on the
notes after said notes fell due; the notes themselves providing that
they were payable on certain dates with interest.  The court holds
that such supplementary agreement to pay interest could have no
effect whatever as against subsequent purchaser or incumbrancer
who purchased before such agreement or purchased after such
agreement but without notice of it.

The case of Frost v. Beekman, 1 Johns. Ch. (N. Y.) 288, was
one wherein a mortgage was given to secure a note for $3,000, and
the mortgage properly described the indebtedness, but in recording

the same the register, through error, made it $300, and in this case the court held that a subsequent purchaser ,without notice had a right to rely upon the record as he found it and could not be required to pay more. We are therefore clearly of the opinion that, as regards all the notes excepting the first one, the plaintiff was not required to pay any interest except ·the 6 per cent. payable annually in order to redeem the land from the mortgage indebtedness.

As regards the first note another question arises. The defendant knew the plaintiff supposed this to be paid in full. The defendant, under the instructions of his principal, was required to inspect that note for the purpose of being certain it had been paid in full. He failed to inspect it. Therefore the plaintiff is entitled to recover from him whatever sum the plaintiff could legally be held to pay upon said note. The indorsements on the back of this note appearing to be made prior to the purchase of this land are as follows: "September 18, 1901, rec'd on within $687.71. September 20, 1901, rec'd on within $300.00." It also appears that the note was finally paid in full December 14, 1904, and the evidence clearly shows such last payment was made by plaintiff. What then, as against the plaintiff, could the owner of said note require as a condition for the release of the mortgage? The mortgage was constructive notice of the note of $1,000 at 6 per cent. interest payable annually. Could plaintiff insist that this note be figured at 6 per cent. annually from its inception, and that these two credits be allowed thereon? We think not. As between the original parties there was a year's interest at 12 per cent. before any payments, and the same rate continued upon balance unpaid up to the time of the sale of this land. If the plaintiff wished to rely upon the fact that this note was in part or in full paid, he was bound to ascertain the true facts in relation thereto, and even information that a certain amount had been paid thereon would not excuse him from ascertaining what disposition had been made of such funds as between the original parties. In the case of Mills et al. v. Kellogg et al., 7 Minn. 469, the facts were, briefly, as follows: A party owning land gave a mortgage thereon securing notes bearing a high rate of interest. Subsequent incumbrances

were placed upon this land, the interest on the first mortgage was duly paid until maturity, and under the law of Minnesota, as it then was, the mortgagee of the first mortgage could have collected interest at the rate of 7 per cent. only, after the maturity of the note; but, through an agreement reached between the mortgagor and the mortgagee, the mortgagor under this first mortgage continued to pay an excessively high rate of interest for some time after the maturity of the note. On action to foreclose said first mortgage, the subsequent mortgagee claimed that the money paid on this excessive interest should be credited upon the note allowing the legal interest only, but the court held that this should not be done. The matter of this payment of interest as between the mortgagor and mortgagee was a matter in which the subsequent purchasers had no interest or equities.

In the case of Lash v. Edgerton et al., 13 Minn. 210 (Gil. 197), the facts were somewhat similar to those in the case last above, and the question arose as to how money should be applied that had been derived from a collateral where no specific application had been made by the parties. This, as will be seen, is the situation in the case at bar. Certain amounts were indorsed on the back of this first note with no statement of how much was applied on interest and how much on the principal. The court in the Minnesota case say, in speaking of the mortgagor and mortgagee: "It does not appear that Edgerton or Folsom made any specific application of the proceeds of the judgment either to payment of the principal or interest on the $1,000 note last mentioned. When a payment made by a debtor is not applied to the liquidation of any particular indebtedness by the debtor or the creditor, the law applies it; * * * and, when the indebtedness consists of a principal and the interest thereon, the law applies the payment first to satisfy the interest." Applying this rule to the case at bar, if this money had been paid and no indorsement made upon the note, we should be bound to apply the whole sum, so far as necessary to the payment thereof, upon the interest due on all the notes at the time of such payments. The mortgagee, having indorsed the sum on one note, has by such act designated the note upon which credit shall be given; but, having failed to designate whether it

shall be credited as principal or interest, it becomes the duty of the court to credit, as interest, sufficient to pay the interest, at rates in note, on this one note up to the time of such payment, crediting the balance on the principal.

As against the plaintiff such balance of the principal should only draw 6 per cent. interest payable annually. As to the interest on the annual installments of interest, there being nothing in the mortgage to indicate that there is any contract whatever covering such interest on interest, the amount thereof would be controlled by section 1417, Rev. Civ. Code, and such installments of interest would each bear 7 per cent. simple interest. Therefore, according to our views, to ascertain the amount which plaintiff should recover from defendant, owing to the fact that the first note was not fully paid, we need only to ascertain the amount that would remain due on December 14, 1904, the date when it appears that the plaintiff paid said note, which would be the date when his cause of action arose. It is true that the land deal closed on August 16, 1904, but plaintiff should not be allowed to compute the amount to that date and then charge defendant with 7 per cent. interest from that date, for the reason that between such dates plaintiff himself was only holden for 6 per cent. interest. From what we have said herein, it is clear that plaintiff can recover from defendant on account of any payment he may have made upon the other four notes only the excess, which the mortgagee, under the provision in the mortgage providing for interest to be paid annually, could legally collect of him, over what would have been collectible if the notes had borne 6 per cent. straight, as represented by the defendant, and this excess would be 7 per cent. per annum on the several yearly installments of interest computing such annual installments at 6 per cent. per annum.

The plaintiff alleged in his complaint that he assumed the mortgage indebtedness; but, while there is some evidence which would indicate that he was willing and expected to so assume such indebtedness, this evidence is contained in letters written defendant by plaintiff, and neither the deed taken by plaintiff or any other evidence is in the record, showing that plaintiff ever did assume the mortgage indebtedness. We do not desire to be un-

derstood as intimating any opinion whatever as to the effect of such an assumption, if there was one, upon the rights of the parties herein.

The appellant assigned as error certain rulings of the court in relation to the admission of evidence to show amount of taxes remaining unpaid against the land at time of purchase by plaintiff. Inasmuch as these questions will probably not arise upon new trial of the case, and we deem such new trial necessary, we will pass such assignments without consideration.

The former opinion of this court, the judgment of the trial court, and the order denying a new trial are reversed.

CORSON, J. (dissenting). In the statement of facts in the former opinion, a slight error occurs in assuming that the indebtedness specied in the mortgage was evidenced by one note, instead of six notes, as appears from the record in the case. The error, however, in the statement, does not in any manner affect the decision of the case. The fact that six notes were secured by the mortgage, instead of one, in no manner affects the question to be decided or the decision of this court in the case. Upon a careful review of the authorities, and arguments of counsel on the rehearing, I see no reason for changing my opinion or views expressed therein, and think the judgment and order of the circuit court should be affirmed.

HANEY, P. J., concurs in dissent.